J-A20007-25                    2026 PA Super 62

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                           :       PENNSYLVANIA
                                           :
               v.                         :
                                           :
                                           :
SHAWN OGLESBY,                  :
                                           :
           Appellant               :      No. 2407 EDA 2024

Appeal from the Judgment of Sentence Entered August 7, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003217-2019

BEFORE:   MURRAY, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.[*]

OPINION BY MURRAY, J.:                    **FILED MARCH 27, 2026**

Shawn Oglesby (Appellant) appeals from the judgment of sentence imposed following the revocation of his probation for a second, technical violation.[1]  Appellant claims the violation of probation (VOP) court imposed an illegal sentence, in contravention of the recent amendments to 42 Pa.C.S.A. § 9771(c),[2] where the court miscalculated Appellant's number of technical probation violations for purposes of applying section 9771(c).  Because Appellant's sentence of one to three years' incarceration exceeded the 30-day

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] In our Sentencing Code, "technical violation" is defined as a "violation of the specific terms and conditions of a defendant's probation, other than by the commission of a new crime of which the defendant is convicted or found guilty[.]"  42 Pa.C.S.A. § 9774.1(k).

[2] Approximately two months prior to Appellant's sentencing hearing, the General Assembly enacted significant amendments to section 9771(c).  **See** 42 Pa.C.S.A. § 9771(c), as amended by Act of Dec. 14, 2023, P.L. 381, No. 44 ("Act 44") (effective June 11, 2024).  It is undisputed that the amended version of section 9771(c) applies to Appellant's case.

maximum sentence authorized by subsection 9771(c)(2)(ii) for a second technical violation, we vacate the judgment of sentence as unlawful and remand for resentencing.

## Statutory Language

In light of the import of section 9771(c)'s language to this appeal, we set it forth at the outset:[3]

> **(c) Limitation on sentence of total confinement**.  There is a *presumption against total confinement for technical violations* of probation.  The following shall apply:
>
> > **(1)** The court may impose a sentence of total confinement upon revocation only if:
> >
> > > **(i)** the defendant has been convicted of another crime;
> > >
> > > **(ii)** the court finds by clear and convincing evidence that the defendant committed a technical violation that involves an identifiable threat to public safety and the defendant cannot be safely diverted from total confinement through less restrictive means; or
> > >
> > > **(iii)** the court finds by a preponderance of the evidence that the defendant committed a technical violation and any of the following apply:
> > >
> > > > **(A)** The technical violation was sexual in nature.

---

[3] The version of section 9771 applicable at the time of Appellant's resentencing was effective from June 11, 2024, to October 20, 2025.  Recently, the legislature again amended Section 9771.  **See** Act of July 21, 2025, P.L. 127 No. 38, § 1 (effective October 20, 2025).  We observe the amendments were minor and do not implicate any of the statutory language reproduced herein; rather, the amendments merely altered language in subsection 9771(c)(2)(iv), which is not pertinent to this appeal.

**(B)** The technical violation involved assaultive behavior or included a credible threat to cause bodily injury to another, including acts committed against a family or household member.

**(C)** The technical violation involved possession or control of a firearm or dangerous weapon.

**(D)** The technical violation involved the manufacture, sale, delivery or possession with the intent to manufacture, sell or deliver, a controlled substance or other drug regulated under the act of April 14, 1972 (P.L.233, No.64), known as The Controlled Substance, Drug, Device and Cosmetic Act.

**(E)** *The defendant absconded and cannot be safely diverted from total confinement through less restrictive means.*

….

**(2)** If a court imposes a sentence of total confinement following a revocation, the basis of which is for one or more technical violations under paragraph (1)(ii) or (iii), the court shall consider the employment status of the defendant. The defendant *shall* be sentenced as follows:

**(i)** For a first technical violation, a maximum period of 14 days.

**(ii)** *For a second technical violation, <u>a maximum period of 30 days</u>.*

**(iii)** *For a third or subsequent technical violation, the court may impose <u>any sentencing alternatives available at the time of initial sentencing</u>.*

42 Pa.C.S.A. § 9771(c)(1), (c)(2) (effective June 11, 2024, to October 19, 2025) (emphasis added). Section 9771 further provides, in subsection (b):

- 3 -

"**Subject to the limitations of subsections** (b.1)[4] **and (c)**, upon revocation [of probation,] the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing …." *Id.* § 9771(b) (emphasis and footnote added).

This Court, in *Commonwealth v. Seals*, ___ A.3d ___, 2026 PA Super 29 (Pa. Super. filed Feb. 17, 2026) (*en banc*), recently analyzed the foregoing language and observed that

> through the enactment of Act 44, section 9771(c) prohibits the court from imposing a sentence of total confinement for a technical violation of probation, subject to delineated exceptions, and imposes specific, relatively short maximum sentences for a period of confinement imposed for a first or second technical violation.

*Id.* (Slip Op. at 17). The *Seals* Court elaborated, "Act 44 substantially limited [a VOP] court's resentencing authority under subsection (c), which differs significantly from the prior version" of section 9771(c). *Id.* (Slip Op. at 15); *see also id.* (Slip Op. at 28) ("[W]ithout the fulfillment of statutory preconditions, section 9771(c) strips the sentencing court of its customary authority to exercise discretion in sentencing.").

### Procedural History

In its Pa.R.A.P. 1925(a) opinion, the VOP court summarized the events leading up to Appellant's present VOP resentencing:

---

[4] Subsection (b.1), which pertains to failure to pay fines, is inapplicable to the instant case.

- 4 -

On April 18, 2019, Appellant was arrested for [possession with intent to deliver a controlled substance, 35 P.S. § 780-113(a)(30), and criminal conspiracy to commit the same offense, 18 Pa.C.S.A. § 903(a).] Appellant entered into a negotiated guilty plea for both charges on June 4, 2019. Sentencing was deferred and the court ordered a pre-sentence investigation report, [as well as] a forensic intensive recovery [substance abuse evaluation] …. Appellant remained on bail.

Appellant failed to appear at the scheduled sentencing [hearing] on August 13, 2019. …. On September 5, 2019, Appellant returned to the court and his bail was revoked. Appellant was sentenced [by the Honorable Rayford A. Means (Judge Means)] on [October] 2, 2019, to eleven and a half to twenty-three months [in jail], followed by four years of reporting probation. The court made Appellant re-entry eligible, … and immediately paroled him to [a drug] treatment [facility] when a bed became available.

On February 6, 2020, a bench warrant was issued for [Appellant's arrest based on his] absconding from [the supervision of the Philadelphia] Adult Parole and Probation Department (hereinafter "APPD").[5] Subsequently, on February 20, 2020, [following a ***Gagnon I***[6] VOP hearing, Judge Means] lifted the [bench warrant], lodged a detainer, and denied Appellant's motion

---

[5] Neither the record nor VOP court docket indicate that APPD or the Commonwealth filed a petition to revoke Appellant's probation, or a notice of probation violations.

[6] ***See Gagnon v. Scarpelli***, 411 U.S. 778, 781-82 (1973) (discussing revocation hearings). This Court has explained that

when a parolee or probationer is detained pending a revocation hearing, due process requires a determination at a pre-revocation hearing, a ***Gagnon I*** hearing, that probable cause exists to believe that a violation has been committed. Where a finding of probable cause is made, a second, more comprehensive hearing, a ***Gagnon II*** hearing, is required before a final revocation decision can be made.

***Commonwealth v. Allshouse***, 969 A.2d 1236, 1240 (Pa. Super. 2009) (some internal citations omitted).

- 5 -

to remove the detainer.[7]  However, due to COVID-19, Appellant's detainer was lifted on April 9, 2020[, with the Commonwealth's agreement].

VOP Court Opinion, 11/4/24, at 2 (footnotes added; footnote citations in original omitted; some punctuation modified).

On August 3, 2020, APPD filed a **Gagnon II** Summary, which stated Appellant had committed potential direct violations of his probation. Specifically, Appellant was arrested on February 11, 2020, and charged with, *inter alia*, simple assault and recklessly endangering another person. **Gagnon II** Summary, 8/3/20, at 1 (unpaginated).  It is undisputed that these charges were eventually withdrawn.  **See** Commonwealth's Brief at 3; **Gagnon II** Summary, 12/30/20, at 2 (unpaginated).

Four months later, APPD filed another **Gagnon II** Summary wherein it recommended that Appellant's "probation be continued."  **Gagnon II** Summary, 12/3/20, at 2 (unpaginated); **see also id.** (summarizing Appellant's supervision history and explaining that APPD had previously struggled to make contact with Appellant).  According to the VOP court docket,

_____

[7] Pertinently, it is undisputed that Judge Means did not find Appellant in violation of his probationary conditions.  Our review further discloses that the certified record does not contain a transcript of the February 20, 2020, hearing.  However, the VOP court docket states that Appellant "object[ed] to these **Gagnon** Hearings not being recorded by digital recording or a representative of the Court Reporter's Office."  Order, 8/20/21 (citation modified).

Judge Means conducted a VOP hearing on December 8, 2020, at the conclusion of which Appellant's probation was continued.[8]

Subsequently, on August 2, 2021, a bench warrant was issued for Appellant's arrest, based on his absconding from supervision. APPD filed a *Gagnon II* Summary on August 16, 2021, asserting that five days earlier, Appellant was arrested and charged with retail theft,[9] "which violates [Judge Means's] supervision." *Gagnon II* Summary, 8/16/21, at 2 (unpaginated).

On August 20, 2021, the VOP court lifted Appellant's bench warrant, lodged a detainer, and granted Appellant's motion to remove the detainer.[10] On September 1, 2021, Judge Means conducted an un-transcribed VOP hearing, at the conclusion of which Appellant's probation was continued.

The VOP court docket indicates that on April 27, 2022, a bench warrant was issued based on an unspecified "Probation Violation." There are no further docket entries until December 22, 2023, when APPD petitioned to schedule a

_____

[8] The record does not contain a transcript of the December 8, 2020, hearing. However, it is undisputed that Judge Means found no violation of Appellant's probationary conditions.

[9] The record does not reveal the disposition of the purported retail theft charge.

[10] The August 20, 2021, order is not contained in the record.

*Gagnon I* hearing.[11]  The VOP court subsequently issued another bench warrant for Appellant, as well as a detainer.

In January 2024, following Judge Means's retirement from the bench, Appellant's case was reassigned to the Honorable Natasha Taylor-Smith (Judge Taylor-Smith).  Judge Taylor-Smith conducted a VOP hearing on January 10, 2024.[12]  It is undisputed that Judge Taylor-Smith found Appellant in technical violation and revoked his probation.[13]  However, the record does not elucidate the nature of the violation.  Judge Taylor-Smith resentenced Appellant to three years of probation.

In April 2024, APPD filed another *Gagnon II* Summary wherein it "requested [a] violation of probation hearing to address [Appellant's] chronic absconder status."  *Gagnon II* Summary, 4/10/24, at 2 (unpaginated); *see also id.* (asserting that after the January 10, 2024, VOP hearing, "[Appellant] never reported to the APPD.  Contact notices were sent to [Appellant's] last known address but were returned.").  Although the VOP court scheduled a VOP hearing for April 16, 2024, Appellant failed to appear.  Consequently, the

_____

[11] APPD filed a *Gagnon I* Summary on December 26, 2023.

[12] The record does not contain a transcript of the January 10, 2024, hearing.

[13] Notably, at issue in this appeal is whether Judge Taylor-Smith's January 10, 2024, ruling constituted Appellant's first, or subsequent, technical probation violation, for purposes of applying 42 Pa.C.S.A. § 9771(c)(2).  Appellant asserts it was his first technical violation, whereas the Commonwealth and VOP court claim it was at least a fifth violation.

VOP court issued a bench warrant. Following Appellant's apprehension, the court lifted the bench warrant on May 15, 2024, and lodged a detainer, pending a VOP hearing.

Judge Taylor-Smith conducted a VOP hearing on August 7, 2024. Defense counsel requested that the court "consider lifting the detainer and continuing [Appellant's] supervision[.]" N.T., 8/7/24, at 4. The Commonwealth countered that a sentence of total confinement was appropriate, particularly in light of Appellant's history of absconding and probation violations. *Id.* at 5. Judge Taylor-Smith found Appellant in technical violation of his probation. *Id.* at 6.

Judge Taylor-Smith then reviewed the history of Appellant's supervision and probation violations. *Id.* at 8-9. The court considered argument from the parties, including the following argument from defense counsel:

> Your Honor, if I may make argument on the record [regarding] the amendments to [section] 97[]71[(c)]. It's my argument that [**Appellant**] **has** [] **one prior re-sentencing**, as Your Honor mentioned, in January of 2024. [] My argument [is] that **this would be** [**Appellant's**] *second* **technical violation, as he hasn't been** *found* **in technical violation previously by the court but for that resentencing**[. T]herefore, **under** [**section 9771(c)(2)(ii)**], it's my understanding that **the court would be limited to 30 days of incarceration.** First and foremost, [because] … this would be [Appellant's] second technical violation, but also the second prong being that there is no showing that [Appellant] cannot be safely [rehabilitated] through less restrictive means.

N.T., 8/7/24, at 9 (emphasis added; some punctuation and capitalization modified). The Commonwealth did not respond to Appellant's argument regarding section 9771(c). *See id.*

The VOP court rejected Appellant's claim that section 9771(c)(2)(ii) applied and statutorily limited Appellant's sentence to no more than 30 days' incarceration, reasoning as follows:

> I understand the defense argument that this would only be [Appellant's] second [probation] revocation. But **in terms of actual**[] **violations, this is at least … the 6th violation of his supervision**, even if he had [] been [previously] revoked [] on [only] one other occasion.

*Id.* at 10 (emphasis added). Accordingly, the VOP court implied that it had the authority to impose any sentencing alternatives available at the time of Appellant's original sentencing.[14] *See id.* at 10-11; *see also* 42 Pa.C.S.A. § 9771(c)(2)(iii) ("For a third or subsequent technical [probation] violation, the court may impose any sentencing alternatives available at the time of initial sentencing."), and *id.* § 9771(b).

The VOP court revoked Appellant's probation and resentenced him to one to three years' imprisonment. N.T., 8/7/24, at 12-13. In imposing sentence, the court stated that it had considered, *inter alia*, Appellant's (1) "number of [probation] violations"; (2) allocution; (3) lack of sincere remorse;

---

[14] Pertinently, the VOP court did not reference section 9771(c) when imposing sentence.

(4) lack of respect for the court; and (5) "new arrest."[15] *See id.* Appellant did not file post-sentence motions.

Appellant timely filed a notice of appeal. Appellant and the VOP court have complied with Pa.R.A.P. 1925.

### Issues

Appellant presents three issues for our review:

1. Whether the [VOP] court illegally sentenced [Appellant] beyond 42 Pa.C.S. § 9771(c)(2)(ii)'s 30-day maximum penalty for only a second technical violation of probation?

2. Whether the [VOP] court imposed an illegal sentence, where the prosecution presented insufficient evidence at revocation proceedings to establish any of the necessary pre-requisite conditions under 42 Pa.C.S. § 9771(c)(1) that would authorize a sentence of total confinement?

3. Whether the [VOP] court imposed an illegal sentence when it considered [Appellant's] bare record of an arrest that did not result in conviction?

Appellant's Brief at 3 (issues reordered for ease of disposition).

We address Appellant's first two issues together, as they are closely related. Appellant asks us to vacate his sentence as unlawful where, upon revocation of probation for a second technical violation, the VOP court imposed a sentence of total confinement that exceeded the 30-day maximum sentence

---

[15] In a *Gagnon II* Summary filed on August 1, 2024, APPD stated that on April 14, 2024, "[Appellant] incurred a new arrest" for retail theft; however, that charge was subsequently withdrawn. *Gagnon II* Summary, 8/1/24, at 2 (unpaginated); *see also* N.T., 8/7/24, at 3 (Judge Taylor-Smith recognizing that "[Appellant] picked up a new arrest [on] April [] 14th").

authorized by subsection 9771(c)(2)(ii). ***See id.*** at 26-47; ***see also*** 42 Pa.C.S.A. § 9771(c)(2)(ii) ("If a court imposes a sentence of total confinement following a revocation, the basis of which is for one or more technical violations under paragraph (1)(ii) or (iii)," the court may impose "a maximum period of 30 days" "[f]or a second technical violation").

### Issue Preservation/Characterization

We initially address whether Appellant preserved this claim for our review. ***See Commonwealth v. Miller***, 80 A.3d 806, 811 (Pa. Super. 2013) ("Issue preservation is foundational to proper appellate review." (citation omitted)). This Court's recent *en banc* decision in ***Seals***, ***supra***, guides our analysis. There, we observed that

> [c]orrect classification of a sentencing challenge is important, in pertinent part, to the question of issue preservation. Generally, an appellate court cannot review an issue that the appellant did not raise and preserve before the trial court. ***See Commonwealth v. Barnes***, 151 A.3d 121, 498 (Pa. 2016); ***see also*** Pa.R.A.P. 302 ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). One exception to this general requirement, however, is a "challenge … implicating the legality of the appellant's sentence." ***Barnes***, 151 A.3d at 124. **A challenge to the legality of a sentence can be appealed as of right and cannot be waived, whereas a challenge of the discretionary aspects of a sentence has procedural prerequisites**, including issue preservation, identification of the issue in an appellate brief in accordance with Pa.R.A.P. 2119(f), and raising a substantial question that the sentence is not appropriate under the Sentencing Code to invoke this Court's discretion to address the issue on appeal. ***See*** 42 Pa.C.S. § 9781(a), (b); Pa.R.A.P. 2119(f); ***see also Commonwealth v. Davis***, 341 A.3d 808, 813 (Pa. Super. 2025). Recognizing that the line between the two types of claims is not always clear, our Supreme Court has directed us to consider whether an appellant is challenging the trial court's authority to

impose the sentence at issue—a legality challenge—or to [the] trial court's exercise of that authority—a discretionary aspects challenge. *See Commonwealth v. Prinkey*, 277 A.3d 554, 560, 563-64 (Pa. 2022).

*Seals*, 2026 PA Super 29 (Slip Op. at 17-18) (emphasis added); *see also Commonwealth v. Starr*, 234 A.3d 755, 764 (Pa. Super. 2020) (stating that "a challenge to the legality of the sentence cannot be waived, but a challenge to the discretionary aspects can." (citation omitted)).

Thus, we must first determine whether Appellant's claim implicates the legality or the discretionary aspects of his sentence; if the former, the claim is not subject to issue preservation requirements. *Id.* "The question of whether a challenge to a sentence implicates its discretionary aspects or its legality presents a pure question of law." *Id.* (Slip Op. at 24) (quoting *Prinkey*, 277 A.3d at 560). "We review questions of law *de novo* with a plenary scope of review." *Id.*

The Commonwealth contends Appellant's claim implicates the discretionary aspects of sentencing and is thus subject to waiver. *See* Commonwealth's Brief at 10-16, 26-27. The Commonwealth asserts "this Court [has] held that claims alleging that a VOP court failed to comply with Section 9771(c)'s sentencing provisions go to the discretionary aspects of sentenc[ing,]" as opposed to the legality of the sentence. *Id.* at 26. In support, the Commonwealth cites this Court's panel decisions in *Commonwealth v. Schutzues*, 54 A.3d 86 (Pa. Super. 2012), and

*Commonwealth v. Slaughter*, 339 A.3d 456 (Pa. Super. 2025), both of which we discuss below.   *See* Commonwealth Brief at 11-16, 26-27.

The Commonwealth correctly points out that Appellant's brief does not include a Pa.R.A.P. 2119(f) statement.  Commonwealth Brief at 27; *see also Seals*, *supra* (stating that the inclusion of a Rule 2119(f) statement in an appellant's brief is one of the procedural prerequisites to reach the merits of a challenge to the discretionary aspects of sentencing).  The Commonwealth objects to Appellant's omission of a Rule 2119(f) statement and asserts that he waived his claim on this basis.  Commonwealth Brief at 27 (citing *Commonwealth v. Lively*, 231 A.3d 1003, 1011 (Pa. Super. 2020) (stating, in the context of a challenge to the discretionary aspects of sentencing: "If a defendant fails to include an issue in his Rule 2119(f) statement, and the Commonwealth objects, then the issue is waived and this Court may not review the claim." (citation omitted)).

Appellant counters that his issue is a non-waivable challenge to the legality of the sentence.  Appellant's Brief at 46-47.  According to Appellant, our legislature's "use of the words 'shall' and 'maximum'" in subsection 9771(c)(2)(ii) "leaves no room for a revocation court to exercise discretion and impose more than 30 days of confinement for a second technical violation." *Id.* at 47 (citing 42 Pa.C.S.A. § 9771(c)(2)(ii)).  Appellant contends *Schutzues* and *Slaughter* are distinguishable.   *See* Appellant's Reply Brief at 1-6.

We are guided by this Court's recent *en banc* decision in ***Seals***, ***supra***, which was decided after the parties in the instant appeal filed their respective appellate briefs. In ***Seals***, the defendant argued that the VOP court erred in imposing a sentence of total confinement, following the revocation of his probation for technical violations, where the sentence imposed (one to five years' imprisonment) exceeded the 14-day maximum sentence authorized by subsection 9771(c)(2)(i) for a first technical violation. ***Seals***, 2026 PA Super 29 (Slip Op. at 30).

The ***Seals*** Court analyzed both ***Schutzues*** and ***Slaughter***,[16] and announced that

> to the extent that ***Schutzues*** or ***Slaughter*** classify a claim involving a sentencing court's failure to consider and/or make the findings required by section 9771(c) as a matter implicating the discretionary aspects of a sentence, they are **overruled**.

---

[16] In lieu of reproducing herein ***Seals***'s thorough analysis of ***Schutzues*** and ***Slaughter***, we instead refer to ***Seals***. ***See Seals***, 2026 PA Super 29 (Slip Op. at 18-22). In short, in ***Schutzues***, a decision from 2012, this Court applied the **former version** of Section 9771(c), which is substantially different than the version of the statute as amended by Act 44. ***See Seals***, 2026 PA Super 29 (Slip Op. at 20-21); ***Schutzues***, 54 A.3d at 98 (holding that "challenges under [former section] 9771(c) are not among the narrow class of issues that implicate the legality of a sentence."). In ***Slaughter***, which was decided after the Act 44 amendments became effective, a panel of this Court, citing the previously-quoted language in ***Schutzues***, "classified a resentencing challenge alleging a 'lack of adherence' to newly amended section 9771(c) as one implicating the discretionary aspects of sentencing." ***Seals***, 2026 PA Super 29 (Slip. Op. at 18) (quoting ***Slaughter***, 339 A.3d at 464).

*Seals*, 2026 PA Super 29 (Slip Op. at 29) (emphasis added). The *Seals* Court determined that our Supreme Court, in *Prinkey*, *supra*, "repudiated the analysis underpinning *Schutzues*," and observed the *Prinkey* Court instructed that

> the inquiry is whether, assuming the appellant's claim prevails, the result would be that the trial court lacked authority to impose the sentence at issue. If so, then the appellant's challenge implicates the legality of his sentence. Conversely, if the challenge is not to the existence of certain authority but to the exercise of that authority, then the challenge goes to the discretionary aspects of a sentence, not to its legality.

*Seals*, 2026 PA Super 29 (Slip Op. at 27) (quoting *Prinkey*, 277 A.3d at 563-64).

The *Seals* Court held that "a claim that the trial court failed to adhere to section 9771(c) when resentencing a probationer to a period of total confinement implicates the legality of the sentence, not its discretionary aspects." *Id.* (Slip Op. at 27); *see also id.* (Slip Op. at 26) (recognizing "a claim that a sentence was imposed without the fulfillment of statutory preconditions to the court's sentencing authority [is] a challenge to the legality of sentence." (citation and internal quotation marks omitted)).

In accordance with *Seals*, we conclude Appellant's claim implicates the legality of his sentence, not the discretionary aspects of sentencing, and it is therefore non-waivable. *Id.* (Slip Op. at 27); *see also Commonwealth v. Hansley*, 47 A.3d 1180, 1189 (Pa. 2012) ("The classic claim of an 'illegal

sentence' is one that exceeds the statutory limits." (citation omitted)).  We thus proceed to address the merits of Appellant's first issue.

### Appellant's Argument

Appellant argues that under subsection 9771(c)(2)(ii), the VOP court lacked authority to impose a sentence of incarceration in excess of 30 days' incarceration, for his second technical probation violation.  Appellant's Brief at 26-27; *see also id.* at 27 (pointing out that pursuant to subsection 9771(c)(2)(iii), "[o]nly upon finding a third [or subsequent] technical violation may a [VOP] court impose a sentence exceeding 30 days of incarceration.").  Appellant contends that the VOP court

> lacked authority to sentence [him] … for "a third or subsequent technical violation," 42 Pa.C.S.A. § 9771(c)(2)(iii), because the [VOP] court found him in technical violation on only one prior occasion, January 10, 2024.

Appellant's Brief at 45 (one footnote omitted; remaining footnote citation to record modified and moved to body).

Initially, we set forth the reasoning advanced in the VOP court's Rule 1925(a) opinion, which rejected Appellant's legality challenge:

> Appellant argues the technical violation found by [the VOP] court on August 7, 2024, was his second technical violation.  Therefore, Appellant asserts, legally, he can only be sentenced to a maximum period of thirty days of incarceration.  *See* [42 Pa.C.S.A.] § 9771(c)(2)(ii).  However, Appellant is incorrect.  **Although Appellant's probation was never revoked, he still committed technical violations of his supervision on multiple occasions.  Appellant has technically violated his supervision at least six times.**

Appellant first violated his supervision[, in December 2019,] when he left the [court-]ordered [drug] treatment program the same day he arrived [at the treatment facility]. After leaving, Appellant failed to contact APPD and was in absconding status until he was arrested on February 11, 2020 ….

On October 7, 2020, Appellant contacted APPD to confirm his address. However, that was the last contact APPD had with him until he returned to custody via an arrest on August 11, 2021. …. At a violation hearing on September 1, 2021, the court continued Appellant's probation. After the hearing, Appellant failed to report to APPD. Despite numerous efforts, APPD was unable to establish contact with Appellant. On December 21, 2023, Appellant returned to custody via a new arrest. ….

Appellant was found to be in violation of his supervision on January 10, 2024. [The VOP] court resentenced Appellant to three years of reporting probation. Despite being given the opportunity to do so, Appellant did not report to APPD as ordered. Appellant absconded for twenty-nine days before he was arrested on February 8, 2024. Appellant was released from custody the same day[, and subsequently] absconded … before being arrested and returned to custody on April 14, 2024. Again, Appellant was released the same day and continued to abscond [from] supervision until May 6, 2024, when he was picked up on an absconder warrant. From the start of Appellant's supervision to the violation hearing on August 7, 2024, Appellant absconded for approximately 1,283 days, or about three and a half years.

VOP Court Opinion, 11/4/24, at 7-8 (footnote citations to record omitted; emphasis added; punctuation and capitalization modified).

The VOP court concluded that, as Appellant purportedly had more than three technical probation violations, pursuant to subsection 9771(c)(2)(iii), the court "could legally impose any sentence that was available at the time of

- 18 -

Appellant's initial sentencing."[17]  *Id.* at 8; *see also* 42 Pa.C.S.A. § 9771(c)(2)(iii).

Appellant disagrees, arguing the VOP court's opinion "advances a perverse interpretation of the law, which only exacerbates the ills of unnecessary incarceration that the General Assembly sought to ameliorate with Section 9771's reforms."  Appellant's Brief at 41; *see also* 42 Pa.C.S.A. § 9771(c) ("There is a presumption against total confinement for technical violations of probation.").  Appellant asserts that *vacatur* of his judgment of sentence is necessary, where the VOP court unlawfully

> treat[ed] **every alleged act of noncompliance** in Appellant's supervision history as a separate[, technical probation] violation under Section 9771(c)(2)(i)-(iii).  Without legal analysis or citation to authority, the [VOP] court counts six technical violations by aggregating related instances of noncompliance that took place during a single probationary period[,] and revisiting years-old allegations of noncompliance that another judge[, *i.e.*, Judge Means,] resolved by not finding [Appellant] culpable.  [**The VOP court**] **punished** [**Appellant**] **as a three-time offender**,

_____

[17] The VOP court did not expressly find that Appellant's technical violations satisfied the statutory prerequisites to imposing a sentence of total confinement set forth in 42 Pa.C.S.A. § 9771(c)(1).  However, the court repeatedly referred to Appellant's history of absconding from supervision, *see*, *e.g.*, VOP Court Opinion, 11/4/24, at 7-8, and found that "Appellant is 'not amenable' to community supervision, as he has failed to report[ and] comply with supervision requirements…."  *Id.* at 10; *see also* N.T., 8/7/24, at 10-11; 42 Pa.C.S.A. § 9771(c)(1)(iii)(E) (providing that a VOP court "may impose a sentence of total confinement," consistent with the provisions of subsection 9771(c)(2), where "[t]he defendant absconded and cannot be safely diverted from total confinement through less restrictive means.").  *Cf. Seals*, 2026 PA Super 29 (Slip Op. at 48) (observing that the VOP court in that case "did not make any findings as to whether Seals' technical violations satisfied the prerequisites to imposing a sentence of total confinement.  *See* 42 Pa.C.S. § 9771(c)(1).").

> [*i.e.*, under subsection 9771(c)(2)(iii),] **even though [the court] had previously <u>found</u> him in technical violation of probation only once**[,] and never afforded him the opportunity to reform while subject to a second[,] technical violation finding.  The [VOP] court's approach offends [Section 9771(c)'s] plain language, contravenes the recidivist philosophy underpinning its recent reforms, and frustrates the General Assembly's intent to curtail total confinement as a sanction for minor technical violations.

Appellant's Brief at 28-29 (footnote omitted; emphasis added; formatting modified).

According to Appellant, "[a] 'technical violation' within the meaning of Section 9771(c)(2) requires a judicial finding."  *Id.* at 29.

> [E]ven if there was properly-admitted evidence in the record suggesting that [Appellant], while on Judge Means' supervision, absconded from time to time and failed to obtain court-ordered [drug] treatment, Judge Means ultimately never found [Appellant] in technical violation for those (or any other) reasons.

*Id.* at 29-30.

Appellant further argues that the VOP court's improper calculation of his number of technical probation violations is contrary to settled Pennsylvania law, which establishes that "unproven allegations of past wrongdoing—without corresponding court findings of culpability—have no probative value."  *Id.* at 30 (footnote omitted) (citing, *inter alia*, **Commonwealth v. Berry**, 323 A.3d 641, 643 (Pa. 2024) ("Because arrests without conviction happen to the innocent as well as the guilty, they offer nothing probative about a defendant's background at sentencing." (footnote and internal quotation marks omitted))).  Appellant contends that

[r]egardless of how many conditions a probationer violates during a single supervision period, the revocation court can find [the probationer] in technical violation but a single time for that conduct. In calculating a first, second, and third or subsequent technical violation[, *i.e.*, for purposes of applying subsection 9771(c)(2)], a court may not aggregate multiple instances of failing the same condition—or failures to complete different conditions—if each instance of noncompliance occurred within the same reporting period.

Appellant's Brief at 34.

Finally, Appellant claims to the extent that section 9771(c) is ambiguous, pursuant to the "rule of lenity" (discussed *infra*), we must resolve the ambiguity in his favor because section 9771(c) is a penal statute. *Id.* at 45.

### The Commonwealth's Argument

The Commonwealth counters the VOP court imposed a lawful sentence pursuant to subsection 9771(c)(2)(iii), where, at the time of sentencing, Appellant had committed more than three prior technical probation violations. *See* Commonwealth's Brief at 26-36; *see also* 42 Pa.C.S.A. § 9771(c)(2)(iii) ("For a third or subsequent technical violation, [a VOP court] may impose any sentencing alternatives available at the time of initial sentencing."). The Commonwealth contends that section 9771(c)'s language

focus[es] on a probationer's **conduct**, *i.e.*, the number of times he has **failed to comply** with the conditions of his probation, and not on the number of times he has **previously been judicially found** to have violated his probation.

*Id.* at 29 (emphasis in original). According to the Commonwealth, section

9771(c) "looks to the number of violations the defendant has **committed**[.]"

*Id.* at 30 (emphasis in original).

> The Commonwealth complains that if Appellant's
>
> proposed interpretation of [section 9771(c)] were to carry the day, a [VOP] court would be limited to sentencing a probationer to no more than fourteen or thirty days of incarceration at a first or second revocation hearing, respectively, regardless of how many technical violations the probationer may have committed up until that point.

*Id.* at 35. Additionally, the Commonwealth concedes

> [Appellant] is correct that the legislative goal of [Act 44] was a graded sentencing scheme to not severely punish probationers for committing first or second technical violations[.] And where a probationer incurs only a first or a second technical violation, then that probationer will receive the benefit of that scheme. What [section 9771(c)] is not intended to do is provide a windfall for probationers who commit numerous technical violations before a first or second revocation hearing is held, which is what [Appellant's] reading of the statute would do.

*Id.* at 33-34 (internal citation and emphasis omitted).

## Standard of Review

We review a challenge to the legality of a sentence *de novo* and with a plenary scope of review. ***Commonwealth v. Prince***, 320 A.3d 698, 700 (Pa. Super. 2024). Where, as here, our statutory analysis concludes that the trial court's authority is "preconditioned on the finding of a triggering fact," the "legality of sentence claim includes our *de novo* review of whether the requisite fact exists." *Id.* at 706. To the extent that our analysis "requires us to engage in statutory interpretation," that too "presents a question of law," *id.* at 703 (citation omitted), of which

we engage in a *de novo* review. [***Commonwealth v.***] ***Crosby***, 329 A.3d [1141,] 1148-49 [(Pa. 2025)].

***Seals***, 2026 PA Super 29 (Slip Op. at 35).

## Statutory Interpretation

The Statutory Construction Act, 1 Pa.C.S.A. §§ 1501-1991, "guides our analysis of statutory text." ***Seals***, 2026 PA Super 29 (Slip Op. at 24). "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a). "The statute's plain language generally provides the best indication of legislative intent." ***A.S. v. Pa. State Police***, 143 A.3d 896, 903 (Pa. 2016) (citation omitted).

> ["]To ascertain [a statute's] plain meaning, we consider the operative statutory language in context and give words and phrases their common and approved usage." ***Commonwealth v. Chesapeake Energy Corp.***, 247 A.3d 934, 942 (Pa. 2021). Further, we must give effect and ascribe meaning to each word and provision chosen by our legislature, assuming none is mere surplusage. ***See***, ***e.g.***, ***Commonwealth v. McClelland***, 233 A.3d 717, 734 (Pa. 2020) ("Some meaning must be ascribed to every word in a statute … and there is a presumption that disfavors interpreting language as mere surplusage."); 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions."). Finally, "we are to assume that the General Assembly does not intend an absurd result to flow from the construction of any statute." ***Commonwealth v. Shiffler***, 879 A.2d 185, 194 (Pa. 2005).

***Commonwealth v. Crenshaw***, 306 A.3d 383, 387-88 (Pa. Super. 2023) (citations and formatting modified).

"If statutory language is ambiguous, sections 1921(c) and 1922 [of the Statutory Construction Act] enumerate nonexclusive lists of eight statutory

construction factors and five presumptions that we may consider to aid us in discerning the General Assembly's intent." ***Seals***, 2026 PA Super 29 (Slip Op. at 25) (citing 1 Pa.C.S.A. §§ 1921(c), 1922). "A statute is ambiguous when there are at least two reasonable interpretations of the text." ***Commonwealth v. Lehman***, 311 A.3d 1034, 1048 n.20 (Pa. 2024) (citation omitted); ***see also Commonwealth v. Griggs***, ____ A.3d ____, 2025 PA Super 285 (Pa. Super. filed Dec. 23, 2025) (Slip Op. at 11) ("It is only when a provision, read in context, is susceptible to at least two reasonable interpretations, or 'raises non-trivial interpretive difficulties on its face,' that we deem the language to be ambiguous.") (quoting ***Commonwealth v. Hardy***, 337 A.3d 385, 409 n.113 (Pa. 2025)).

> Our Supreme Court has explained that
>
> [w]hether a statutory term is unambiguous … does not turn solely on dictionary definitions of its component words. Rather, the plainness or ambiguity of statutory language is determined not only by reference to the language itself, but [also] by the specific context in which that language is used, and the broader context of the statute as a whole.

***A.S.***, 143 A.3d at 906 (citation, brackets, and internal quotation marks omitted).

Moreover, it is established that ambiguity in criminal statutes requires application of the rule of lenity, which provides that penal statutes are to be strictly construed, with any ambiguities being "resolved in favor of the accused." ***Commonwealth v. Coleman***, 285 A.3d 599, 612 (Pa. 2022)

(citation omitted); 1 Pa.C.S.A. § 1928(b)(1) (providing penal statutes "shall be strictly construed").

> As the United States Supreme Court explained in ***Dunn v. United States***, 442 U.S. 100, 99 S. Ct. 2190, 60 L. Ed. 2d 743 (1979), the application of the rule of lenity is "not merely a convenient maxim of statutory construction," but, rather, "is rooted in fundamental principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited." ***Id.*** at 112.

***Commonwealth v. Smith***, 346 A.3d 1251, 1263 (Pa. 2025). "However, this rule of lenity does not require us to 'give the words of a statute their narrowest possible meaning, nor does it override the general principle that the words of a statute must be construed according to their common and approved usage.'" ***Griggs***, 2025 PA Super 285 (Slip Op. at 11-12) (quoting ***Lehman***, 311 A.3d at 1048 n.20).

Upon review, we conclude that section 9771(c), considered in the context of the statutory language as a whole, is ambiguous, as it is amenable to "at least two reasonable interpretations," ***Lehman***, 311 A.3d at 1048 n.20, consistent with the parties' above-described, equally-compelling arguments. The language of section 9771(c) fails to make clear whether, for purposes of tabulating a probationer's "technical violations," a VOP court must count the number of times that the probationer previously (1) committed technical probation violations—*i.e.*, engaged in conduct which violated terms of probation, regardless of whether each individual action resulted in a judicial finding; or (2) had been judicially found to have technically violated

probation.[18]  Although the **Seals** Court did not address this issue, the Court observed that if the "evidence establishes that the probationer has violated the conditions of probation, the trial court must make a **finding on the record** that a violation occurred and then proceed to resentence the petitioner."  **Seals**, 2026 PA Super 29, (Slip Op. at 13) (emphasis added; footnote omitted) (citing 42 Pa.C.S.A. § 9754(d) (providing that the "sentence to be imposed in the event of the violation of a condition [of probation] shall not be fixed prior to a finding on the record that a violation has occurred"), and **id.** § 9771(d) (requiring a VOP hearing prior to revocation of probation)).  Therefore, because we conclude the plain language of section 9771(c), a penal statute, is ambiguous, the rule of lenity mandates that we resolve the ambiguity in Appellant's favor.  **Coleman**, 285 A.3d at 612.

---

[18] The statute defining "technical violation," 42 Pa.C.S.A § 9774.1(k), offers no guidance on this point.  **Id.** (defining technical violation as "[a] violation of the specific terms and conditions of a defendant's probation, other than by the commission of a new crime of which the defendant is convicted or found guilty by a judge or jury or to which the defendant pleads guilty or *nolo contendere* in a court of record."); **see also** 204 Pa. Code § 307a.1(b) (Pennsylvania Resentencing Guideline provision defining "technical violation" as the "[f]ailure to comply with the terms and conditions of an order of probation, other than by the commission of a new offense of which the person is convicted.").

We further observe that this appeal highlights the importance of VOP courts maintaining precise docket entries as to the findings and conclusions reached at **Gagnon I** hearings.  Regardless of whether a VOP court chooses to revoke a probation term or continue a probation term at a **Gagnon I** hearing, the court should explicitly note, in its docket entry for the hearing, whether or not the court found the defendant in violation of his or her probation term and whether the violation was direct or technical in nature.

Moreover, we are persuaded by Appellant's claim that the VOP court's "approach offends [section 9771(c)'s] plain language, contravenes the recidivist philosophy underpinning its recent reforms,[19] and frustrates the General Assembly's intent to curtail total confinement as a sanction for minor technical violations." Appellant's Brief at 29 (footnote added). Thus, we hold that in calculating a probationer's technical violations for purposes of section 9771(c), a VOP court must consider only violating behaviors that were accompanied by a judicial finding that the probationer committed a violation.

**Appellant's VOP Sentence**

Based upon the foregoing, for purposes of application of subsection 9771(c)(2), there is no support for the VOP court's finding that Appellant had committed six or more technical violations at the time of sentencing. Our review discloses only one prior judicial finding of a technical violation; namely, Judge Taylor-Smith's above-described January 10, 2024, probation revocation.

Consistent with subsection 9771(c)(2)(ii) and ***Seals***, ***supra***, we conclude the VOP court lacked the statutory authority to impose a sentence in excess of 30 days' incarceration for a second technical violation. ***See Seals***, 2026 PA Super 29 (Slip Op. at 29) ("Section 9771(c)(2) specifically delineates

---

[19] We reiterate section 9771(c)'s express "**presumption against total confinement for technical violations** of probation." 42 Pa.C.S.A. § 9771(c) (emphasis added).

the maximum allowable sentence of total confinement for a first and second technical violation. Any sentence imposed in excess of the statutory maximum is unquestionably illegal." (internal citations omitted)). Appellant's sentence of one to three years' imprisonment is far greater than the 30-day maximum sentence authorized by subsection 9771(c)(2)(ii), and is therefore illegal. *Id.* (Slip Op. at 49) (vacating Seals's judgment of sentence as illegal and remanding for resentencing, where the VOP court's "sentence of total confinement is far greater than the maximum authorized sentence for a first … technical probation violation" under subsection 9771(c)(2)(i)). Accordingly, we vacate Appellant's judgment of sentence and remand for resentencing consistent with this opinion.[20] *Id.*

Judgment of sentence vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/27/2026

_____

[20] In light of our granting Appellant relief on his first two issues, we need not address his final issue.

- 28 -